IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | Case No. 1:16-cv-1969 |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CITY OF CHICAGO,** | ) | |
| | ) | JURY TRIAL DEMANDED |
| **Defendant.** | ) | |
| | ) | |

# COMPLAINT

Plaintiff United States of America alleges:

1. This civil action is brought on behalf of the United States to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

2. This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 2000e-5(f) and 6(b), and 28 U.S.C. §§ 1331, 1343, and 1345.

3. Venue is proper in this district under 28 U.S.C. § 1391 because defendant City of Chicago ("Chicago") is a municipal government and a political subdivision created pursuant to the laws of the State of Illinois and is located in this district. Venue also is proper because the events giving rise to this lawsuit occurred in this judicial district.

4. Defendant Chicago is a person within the meaning of 42 U.S.C. § 2000e(a)

1

and an employer within the meaning of 42 U.S.C. § 2000e(b).

## COUNT ONE: SECTION 706 OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

5. Defendant Chicago maintains a Police Department ("CPD"), which employs approximately 12,000 sworn officers. Entry-level police officers are required to serve an 18-month probationary period as a Probationary Police Officer ("PPO").

6. In 2006, the first step in the PPO selection process was a written examination. CPD administered the PPO written examination four times in 2006, and approximately 6900 individuals passed those written examinations.

7. Applicants who passed the 2006 written examination were placed on an eligibility list in random order. Candidates drawn from the eligibility list underwent further processing, including a background investigation, prior to hire.

8. As part of the background investigation in 2006, candidate were required to complete a Personal History Questionnaire ("PHQ"). The PHQ asked candidates for information including place of birth and all places of residence since the age of 13.

9. When reviewing the PHQs of candidates who passed one of the 2006 written examinations, CPD disqualified from further hiring consideration all candidates who had not continuously resided in the United States for ten years prior to the date of submission of the completed PHQ. CPD enforced this ten-year continuous residency requirement for all PPO applicants who took the 2006 written examination other than those who were abroad as a result of military service.

10. Masood Khan ("Khan") was born in India and began residing in the United States in May 2003. Khan took and passed the PPO written examination in June 2006. On or about April 30, 2008, CPD notified Khan that, although he had successfully completed other steps of the hiring process, it was rejecting his application for a PPO position because he had resided in the United States for less than ten continuous years.

11. Glenford Flowers ("Flowers") was born in Belize and began residing in the United States in September 1999. Flowers took and passed the PPO written examination in September 2006. Although Flowers subsequently passed other parts of the hiring process, CPD rejected him for a PPO position on or about February 20, 2008, because he had resided in the United States for less than ten continuous years.

12. On June 19, 2008, the Equal Employment Opportunity Commission ("EEOC") received timely charges of discrimination from Khan and Flowers. The EEOC investigated the charges and found reasonable cause to believe Khan, Flowers, and other similarly-situated PPO candidates were subjected to discrimination in hiring on the bases of national origin, in violation of Title VII. The EEOC referred the matter to the United States Department of Justice after an unsuccessful attempt to conciliate the charges.

13. Of the candidates whom CPD disqualified by applying its ten-year continuous residency requirement, approximately 92.2% were foreign-born candidates and only 7.8% were born in the United States. In contrast, of a random sample of candidates who satisfied the ten-year residency requirement and were eligible for hire, only 7.9% were foreign-born and 92.1% were born in the United States. The percentage of foreign-born candidates among those who were disqualified by the ten-year residency

requirement is statistically significantly greater than would be expected based on the makeup of the random sample of candidates who satisfied the ten-year residency requirement.

14. On or about August 15, 2011, CPD replaced the ten-year continuous residency requirement with a five-year continuous residency requirement, which it applied to PPO candidates who passed written examinations administered in 2010 or later.

15. Chicago, through CPD, discriminated against Khan, Flowers, and other similarly-situated PPO candidates in violation of Sections 703(a) and 706(f)(1) of Title VII, 42 U.S.C. § 2000e-2(a) and 2000e-5(f)(1), among other ways, when it rejected them from further hiring consideration pursuant to a policy or practice of discrimination on the basis of their national origin.

16. CPD's use of the ten-year continuous residency requirement to screen candidates for hire as PPOs has resulted in statistically-significant adverse impact against candidates born outside the United States on the basis of their national origin.

17. CPD has not demonstrated that its use of the ten-year continuous residency requirement is job related for the PPO position and consistent with business necessity.

## COUNT TWO: SECTION 707 OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

18. The United States realleges and adopts by reference paragraphs 1 through 17 above.

19. Chicago, through CPD, has pursued policies and practices that discriminate against individuals born outside the United States because of their national origin and that deprive or tend to deprive foreign-born individuals of employment opportunities because of their national origin. The acts and practices of CPD described above in paragraphs 5 through 18 constitute a pattern or practice of discrimination on the basis of national origin in violation of Section 707 of Title VII, 42 U.S.C. § 2000e-6.

20. All conditions precedent to the filing of this lawsuit have been performed or have occurred.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States prays that the Court grant the following relief:

(a) Enjoin defendant Chicago, and its officers, agents, employees, successors and all persons in active concert or participation with it, from engaging in employment practices which discriminate against individuals born outside the United States on the basis of national origin in violation of Title VII, and specifically from using a continuous residency requirement as a pass/fail screening device in a manner that results in disparate impact upon PPO candidates born outside the United States, that is not job related for the position in question and consistent with business necessity, and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

(b) Require defendant Chicago, and its officers, agents, employees, successors and all persons in active concert or participation with it, to provide make-whole relief to individuals who have suffered loss as a result of the discriminatory policies and practices alleged in this Complaint, including the following relief:

      (1) Back pay and all other appropriate monetary relief in an amount to be determined at trial;

      (2) Interest on the amount of lost wages and benefits determined to be due;

      (3) Compensatory damages for the pain, suffering, and medical expenses caused by the discriminatory conduct alleged in this Complaint, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and

      (4) Offers of employment with retroactive seniority.

    (c) Order defendant Chicago, and its officers, agents, employees, successors and all persons in active concert or participation with it, to take appropriate action to overcome the present effects of defendant's discriminatory policies and practices, including but not limited to the following:

      (1) Adopting hiring procedures that do not result in disparate impact or that otherwise comply with Title VII; and

      (2) Taking such other reasonable actions that are necessary to correct the present effects of past discrimination.

    (d) Grant such other and further relief justice may require, together with its costs and disbursements in this action.

## **JURY DEMAND**

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Date: February 5, 2016

        Respectfully submitted,

        VANITA GUPTA
        Principal Deputy Assistant Attorney General

By:    /s/ Delora L. Kennebrew
        DELORA L. KENNEBREW (GABN 414320)
        Chief

          /s/ Valerie L. Meyer
        JOHN P. BUCHKO (DCBN 452745)
        Deputy Chief
        VALERIE L. MEYER (AZBN 023737)
        KATHLEEN O. LAWRENCE (DCBN 1011297)
        CAROL A. WONG (ILBN 6294123)
        Senior Trial Attorneys

        U.S. Department of Justice
        Civil Rights Division
        Employment Litigation Section
        950 Pennsylvania Ave., NW, PHB 4916
        Washington, DC 20530
        Telephone: (202) 305-3179
        Facsimile: (202) 514-1005
        Email: Valerie.Meyer@usdoj.gov

        Attorneys for Plaintiff United States of America